

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00168-CR

RANDALL SHANE SABELLA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 28512

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

# O P I N I O N

Randall Shane Sabella appeals the revocation of his deferred adjudication community supervision. His sole point of error argues that his counsel rendered ineffective assistance in failing to object to positive drug-test results introduced by the State during the revocation hearing. Because we find that Sabella did not meet his burden of showing that counsel was ineffective, we affirm the trial court's judgment.

## I.      Procedural Background

Sabella pled guilty to family violence assault by impeding breath or circulation, a third-degree felony. TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2019). In 2013, pursuant to the terms of his negotiated plea agreement, Sabella was placed on deferred adjudication community supervision for four years. The terms and conditions of Sabella's community supervision required him to remain drug free.

In 2013, the trial court found that Sabella had used methamphetamine and had admitted to the drug use. When Sabella assured the trial court that he would not take another "hit" of methamphetamine, the trial court decided to continue Sabella's community supervision on amended terms and conditions. Despite his assurances, Sabella admitted to using methamphetamine again in 2014. Later, the State filed several other motions to adjudicate Sabella's guilt within the original four-year time period. As a result of the trial court's rulings on those motions, Sabella's community supervision was extended to March 2023.

In 2018, the State filed another motion to adjudicate Sabella's guilt because a hair-follicle test revealed that he had used methamphetamine on March 6, 2018. Before the trial court heard

2

evidence, the State informed the trial court that it intended to offer a business records affidavit executed by the custodian of records for the Texas Alcohol & Drug Testing Service, Inc., which attached Sabella's drug-test laboratory results. The State's proffer included a total of five drug-test results from specimens collected between March 6 and April 17, 2018. Of those results, Sabella's March 6 hair-follicle test was positive for methamphetamine, an April 17 urinalysis was positive for another drug, and the remaining results, including a March 6 urinalysis, were negative. While the affidavit averred that the drug tests were "PERFORMED UTILIZING GC/MS (GAS CHROMATOGRAPHY/MASS SPECTROMETRY) INSTRUMENTS BY A CERTIFIED SCIENTIST AND REVIEWED BY A LICENSED MEDICAL REVIEW OFFICER," the State informed the trial court that it was unable to serve subpoenas issued to the analyst who conducted the drug tests. When asked if he had an objection to the State's proffer, Sabella's counsel stated that he was "challenging the accuracy of the results," but "not objecting to the admission" of the exhibit.

Sabella pled not true to the State's allegation at the adjudication hearing. Cynthia Ware, an officer with the Hunt County Community Supervision and Correction Department, testified about drug-test results from the laboratory reports. Sabella denied using methamphetamine on March 6. He testified that his two-year-old child had also tested positive for methamphetamine and opined that those results and his hair-follicle test were positive from exposure to his wife's methamphetamine use. In closing, Sabella challenged the accuracy of the hair-follicle test and argued that it had produced a false positive resulting from Sabella's contact with his wife during her drug use.

The trial court found the State's allegation true, adjudicated Sabella's guilt, and sentenced him to eight years' imprisonment. On appeal, Sabella argues that counsel rendered ineffective assistance by failing to object to the lab results on Confrontation Clause grounds.

## II. Standard of Review

"The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence." *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). The right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Thus, to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*. 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009).

The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "If this Court 'can conceive potential reasonable trial strategies that counsel could have been pursuing,' then we cannot conclude that counsel's performance was deficient." *Turner v. State*, 528 S.W.3d 569, 577 (Tex. App.—Texarkana 2016, no pet.) (quoting *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005)).

The second *Strickland* prong, sometimes referred to as "the prejudice prong," requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). "Thus, we need not examine both *Strickland* prongs if one cannot be met." *Turner*, 528 S.W.3d at 577 (citing *Strickland*, 466 U.S. at 697). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment)). We "must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias." *Martinez*, 330 S.W.3d at 901 (citing *Strickland*, 466 U.S. at 690). In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* (quoting *Strickland*, 466 U.S. at 696).

The Texas Court of Criminal Appeals has said, "Trial counsel 'should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'" *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Where the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

5

## III. Sabella Did Not Meet his Burden of Showing Counsel's Ineffectiveness on this Silent Record

"The Sixth Amendment to the United States Constitution provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Moore v. State*, 553 S.W.3d 119, 122 (Tex. App.—Texarkana 2018, pet. ref'd) (alteration in original) (quoting U.S. CONST. amend. VI)). "[T]o implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *Id.* (quoting *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) (citing *Crawford v. Washington*, 541 U.S. 36, 50–52, 59 (2004)). "A statement is 'testimonial' when circumstances objectively indicate it was taken for the primary purpose of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Id.* (alterations in original) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

"The admission of a lab report created solely by a non-testifying analyst, without calling that analyst to sponsor it, violates the Confrontation Clause." *Paredes v. State*, 462 S.W.3d 510, 517 (Tex. Crim. App. 2015); *see Burch v. State*, 401 S.W.3d 634, 636–37 (Tex. Crim. App. 2013) (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009)). "Doing so deprives a defendant of his opportunity to cross-examine the non-testifying expert about the conclusions contained in the report and how the non-testifying expert arrived at those conclusions." *Paredes*, 462 S.W.3d at 517. "Once the two *Crawford* conditions have been met and the Confrontation Clause has been implicated, testimonial hearsay is admissible only where '(1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant.'" *Moore*, 553 S.W.3d at 122 (quoting *Woodall*, 336 S.W.3d at 642).

6

Before the Texas Court of Criminal Appeals' 2012 decision in *Ex parte Doan*, which concluded that community supervision hearings are judicial proceedings instead of administrative proceedings, many of our sister courts had concluded that the Confrontation Clause did not apply to community supervision revocation proceedings. *See Ex parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012); *Mauro v. State*, 235 S.W.3d 374, 375–76 (Tex. App.—Eastland 2007, pet. ref'd); *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Diaz v. State*, 172 S.W.3d 668, 672 (Tex. App.—San Antonio 2005, no pet.); *Smart v. State*, 153 S.W.3d 118, 120–21 (Tex. App.—Beaumont 2004, pet. ref'd). To date, the Texas Court of Criminal Appeals has neither expressly considered the issue nor overruled any of those pre-2012 sister-court decisions. Following *Doan*'s issuance, our sister courts have either determined that the Confrontation Clause does not apply during community supervision revocation proceedings or have assumed its application. *Compare Pickens v. State*, No. 02-17-00050-CR, 2018 WL 3468359, at *3 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op., not designated for publication) (finding that the Confrontation Clause does not apply in revocation hearings because they are not "criminal prosecutions" and that *Doan* did not determine otherwise in finding that they constitute "judicial proceedings" instead of "administrative hearings"), *and Roberts v. State*, No. 05-16-00338-CR, 2017 WL 461354, at *3 (Tex. App.—Dallas Jan. 24, 2017, pet. dism'd, untimely filed) (mem. op., not designated for publication) (same), *with Bacilio v. State*, No. 08-14-00096-CR, 2016 WL 1253420, at *3 (Tex. App.—El Paso Mar. 30, 2016, pet. ref'd) (mem. op., not designated for publication) (assuming the application of the Confrontation Clause in revocation hearings), *and Blackman v. State*, No. 01-12-00525-CR, 2014 WL 50804, at *3 (Tex.

7

App.—Houston [1st Dist.] Jan. 7, 2014, pet. ref'd) (mem. op., not designated for publication) (assuming, without deciding, that the Confrontation Clause applies in revocation hearings while acknowledging that "*Doan* did not decide the issue").[1] Sabella does not direct us to, and we have not found, any case expressly finding that the Confrontation Clause applies to revocation proceedings after *Doan*.

"[I]f the appellate court can imagine a strategic motive to explain the ineffective assistance claim, then [it] may not sustain the appellant's point of error." *Bryant v. State*, 282 S.W.3d 156, 168 (Tex. App.—Texarkana 2009, pet. ref'd). Based on the silent record here, it is possible that counsel failed to object to the lab reports because he believed the Confrontation Clause inapplicable in revocation hearings. Such a belief is reasonable given the state of the law pre-*Doan* and the fact that no post-*Doan* case has expressly held that the Confrontation Clause does apply to revocation hearings.

Counsel was also aware of Sabella's prior drug history. Because Sabella could have admitted to counsel that he used methamphetamine on March 6, counsel was free to decide that a challenge to the lab report would be futile. *See Smith v. State*, No. 06-14-00158-CR, 2015 WL 1246009, at *2 (Tex. App.—Texarkana Mar. 17, 2015, no pet.) (mem. op., not designated for publication).[2] Counsel also could have decided that an objection would lead to a continuance of the hearing to assure the appearance of the analyst, whose testimony establishing the reliability of

---

[1]We do not cite any of these unpublished cases for their precedential value, but merely to explain the current state of the law on this issue in Texas.

[2]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

the drug-testing procedures would compromise Sabella's defensive argument that the positive lab reports were inaccurate.

Based on the silent record before us, we conclude that Sabella failed to show that counsel's performance fell below an objective standard of reasonableness. Because we find that Sabella has not met the first *Strickland* prong, we overrule his first point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted: April 2, 2019
Date Decided: April 11, 2019

Publish

9