**Opinion issued June 16, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00051-CR

———————————

**RODOLFO RICO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 6**
**Fort Bend County, Texas**
**Trial Court Case No. 16-CCR-190942**

---

## MEMORANDUM OPINION

Appellant, Rodolfo Rico, pleaded nolo contendere to misdemeanor assault-family violence, and the trial court assessed punishment at 12 months' deferred adjudication community supervision.[1] Four months later, appellant was indicted for

---

[1]   *See* TEX. PENAL CODE § 22.01(a)(1), (b).

felony assault-impeding breath[2] against the same complainant, Desiree Quintero. Based on the new charge, the State moved to adjudicate appellant's guilt in the misdemeanor assault-family violence case, alleging that appellant had committed family violence by "imped[ing] the normal breathing or circulation of the blood of Desiree Quintero by applying pressure to Desiree Quintero's throat or neck[.]" After a hearing on the State's motion, the trial court adjudicated appellant guilty of misdemeanor assault–family violence and assessed his punishment at 270 days' confinement. In four issues, appellant contends that the trial court erred by adjudicating him guilty in violation of the rights guaranteed him by the Confrontation Clauses of the Texas and United States Constitutions.[3] We affirm.

## REVOCATION OF DEFERRED ADJUDICATION COMMUNITY SUPERVISION

In four issues, appellant contends that several pieces of evidence were admitted at trial in violation of his right of confrontation and that "because the State offered no evidence—other than Desiree Quintero's testimonial hearsay—that [appellant] violated any condition of his deferred adjudication, the trial court abused

---

[2]  *See* TEX. PENAL CODE § 22.01(b)(2)(B). These charges were later dismissed when the State proceeded with the adjudication of guilt on the previous charge.

[3]  *See* TEX. CONST. art. I, § 10; U.S. CONST. amend. VI.

is discretion when it found sufficient evidence to support the allegations in the State's motion to adjudicate."

### *Standard of Review*

The State must prove by a preponderance of the evidence that the defendant violated a term of his community supervision to justify adjudication, and we review the evidence's sufficiency under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). Only one sufficient ground is necessary to support a trial court's decision to revoke community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *see also Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012).

### *The Motion-to-Adjudicate Hearing*

A. Stoler, a senior corrections officer with the Fort Bend County Adult Probation Office, authenticated appellant's community supervision record and it was admitted, without objection, through Stoler's testimony.

A. Madrigal, a dispatcher for the Richmond Police Department authenticated the 911 call that she received from Desiree Quintero, which gave rise to the offense alleged in the State's motion to adjudicate. The audiotape of the 911 call was admitted, without objection, through Madrigal's testimony. On the tape, Quintero stated that her ex-boyfriend was hitting her and that his name was "Rodolfo Rico."

Sergeant S. Rychlik of the Richmond Police Department testified that, in response to the 911 call, he was dispatched to an apartment and Desiree Quintero opened the door. He was then questioned about his interaction with Quintero:

[Prosecutor]: And who did you make contact with?

[Rychlik]: Desiree Quintero.

[Prosecutor]: And then when you made contact with her, did she make any statements before you had asked any questions?

[Rychlik]: She admitted that she had been into a verbal altercation or a physical altercation with her ex-boyfriend and she told me he did this—

[Defense Counsel]: I'd object. What she said is hearsay, Judge.

[Prosecutor]: Judge, I'm about to lay the foundation for a hearsay exception to this.

Thereafter, the prosecutor elicited testimony that Quintero was "visibly upset," "sobbing and crying," and that Rychlik had arrived on the scene "just a few minutes" after the 911 call." After laying the foundation for an "excited utterance" exception to the hearsay rule, *see* TEX. R. EVID. 803(2), the prosecutor resumed questioning Rychlik.

[Prosecutor]: And so what else did she state to you?

[Rychlik]: So she proceeded—

[Defense Counsel]: Excuse me. Judge, we have a confrontation objection too.

[Prosecutor]: Judge, State has case law. The confrontation clause does not apply in [motion to adjudicate] hearings. We're not here for the prosecution of a new case; however, we're dealing with, I believe, an

4

administrative hearing on supervised community supervision. All that applies would be the rules for hearsay; however, the State has met the burden for the hearsay exception of an excited utterance.

[Trial Court]: Overruled.

[Defense Counsel]: Your Honor, can we have a running objection as well.

[Trial Court]: Yes.

Thereafter, Rychlik testified about statements Quintero had made to him.[4] Rychlik also testified about what he observed while talking with Quintero and photographs that he took of her. The photographs were admitted in the hearing without objection. Specifically, Rychlik noted that in Exhibit 5, a photograph of Quintero's neck, "there's a lot of redness." According to Quintero, "it was clear to see that [Quintero] had been assaulted on her neck area." Rychlik noted that in Exhibit 6, a photograph of Quintero's neck taken from another angle, "you can kind of see some scratches down around her clavicle and neck area and chest." Rychlik testified that, from his experience, the photos were "consistent with someone being strangled or having pressure put on their neck." Rychlik also said that Quintero's voice sounded like she had been strangled because "she really started clearing her throat a lot and swallowing frequently, and [Rychlik] asked [Quintero] if she was

---

[4] Quintero told Rychlik that after a verbal dispute about appellant cheating on her, Quintero pushed appellant in the chest and he responded by "grab[bing] her by her throat, lift[ing] her up off the ground and proceed[ing] to strangle her and push her up against the wall[.]"

having difficulty swallowing." According to Rychlik, "it was really looking like [Quintero] was struggling to breath[e]." Rychlik testified that the scratches and redness depicted in the photographs would be consistent with "the grabbing of her neck."

The State also moved to admit Exhibit 14, which was a body-cam video of Rychlik's interaction with Quintero. Defense counsel objected, as follows:

> [Defense Counsel]: We object to the audio portion of the body camera based on the same objections as we mentioned earlier to the witness testifying.
>
> [Trial Court]: Overruled. State's 14 will be admitted.

"Due to the physical evidence that [he] observed on [Quintero's] person," Rychlik concluded that Quintero had been assaulted and strangled.

The State rested its case after Rychlik's testimony.

### *Applicability of Confrontation Clause to Revocation Proceedings*

In four related issues, appellant contends that the trial court committed constitutional error when it admitted Quintero's statements to police—through the 911 call, Rychlik's testimony about Quintero's statements, and the audio portion of the body-cam video—in violation of appellant's right of confrontation. Specifically, appellant contends that he was never given the opportunity to cross-examine Quintero, who did not testify. The State responds that the constitutional right of confrontation does not apply in revocation proceedings.

This Court has addressed, but never decided this issue.  In *Torres v. State*, 617 S.W.3d 95, 101 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd), this Court stated:

> To support his contention, [the appellant] cites the Court of Criminal Appeals' opinion in *Ex Parte Doan*, holding that "[c]ommunity-supervision revocation proceedings are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings." 369 S.W.3d 205, 212 (Tex. Crim. App. 2012).
>
> Before the Court's decision in *Doan*, a number of courts of appeals had concluded that the Confrontation Clause did not apply to community supervision revocation proceedings. *See e.g., Mauro v. State*, 235 S.W.3d 374, 375–76 (Tex. App.—Eastland 2007, pet. ref'd); *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The State contends, however, that neither *Doan* nor any subsequent authority expressly considered the issue of whether the Confrontation Clause applies to community supervision revocation proceedings. Nor has the Court of Criminal Appeals overruled any of those pre-2012 intermediate appellate court decisions holding that the Confrontation Clause does not apply in revocation proceedings, and several courts of appeals have determined post-*Doan* that the Confrontation Clause does not apply during community supervision revocation proceedings. *See Sabella v. State*, 578 S.W.3d 137, 142 (Tex. App.—Texarkana 2019, no pet.); *Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd) ("By its own terms, the Confrontation Clause applies only to criminal prosecutions, and a probation revocation, whether it follows 'regular' probation or deferred adjudication probation, is not a stage of criminal prosecutions."); *see also Corona v. State*, No. 14-17-00821-CR, 2019 WL 1768598, at *2–3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op., not designated for publication) ("A community supervision revocation hearing is not part of a criminal prosecution.").
>
> Thus, the question of whether the Confrontation Clause applies in this context remains unsettled. In unpublished memorandum opinions, two courts—including this one—have assumed without deciding that revocation hearings are criminal proceedings for purposes of the Confrontation Clause. *See Blackman v. State*, No. 01-1-00525-CR,

2014 WL 50804, at *3 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, pet. ref'd) ("We acknowledge that *Doan* did not decide the issue of whether a defendant has a right to confront witnesses during a community supervision revocation, and no case since *Doan* has revisited that issue.).

*Id.* at 101.

This Court did not reach the issue in *Torres*, concluding that "even assuming that the trial court did not abuse its discretion in admitting [the disputed evidence], the evidence was insufficient for the trial court to properly exercise its discretion in revoking [the appellant's] deferred adjudication community supervision." *Id.* at 102.

As in *Torres*, the Court need not decide whether the Confrontation Clause applies to revocation proceedings because, here, the State presented sufficient evidence that was not obtained in violation of the Confrontation Clause to support the trial court's exercise of its discretion to revoke appellant's deferred adjudication.

### *Sufficiency of the Evidence Without the Disputed Evidence*

All appellant's issues hinge on his conclusion that "the State offered *no evidence*—other than Desiree Quintero's testimonial hearsay—that [appellant] violated any condition of his deferred adjudication when it found sufficient evidence to support the allegations in the State's motion to adjudicate." (Emphasis added). We disagree.

Even if we were to assume that Quintero's testimonial statements to police should have been excluded, we would nevertheless hold that the State presented

8

sufficient evidence to support the trial court's exercise of its discretion in revoking appellant's deferred adjudication.

First, the trial court admitted the recording of the 911 call, on which Quintero stated that her ex-boyfriend was hitting her. When asked to identify her ex-boyfriend, Quintero stated, "Rodolfo Rico." The 911 call was admitted at the hearing without any objection by appellant. A defendant must object to evidence when it is offered to preserve error from the admission of statements in violation of the Confrontation Clause. *See Craven v. State*, 579 S.W.3d 784, 787–88 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *see also Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). Because appellant did not raise a Confrontation Clause objection at the time the 911 recording was admitted, he cannot do so now. Thus, the trial court properly considered the 911 recording and the statements made therein by Quintero identifying appellant as her assailant.

Second, when Sergeant Rychlik testified that Quintero "admitted that she had been into a verbal altercation or a physical altercation with her ex-boyfriend and she told me he did this," appellant objected based on hearsay, not the Confrontation Clause. A hearsay objection does not preserve a Confrontation Clause argument for appeal. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000); *Saldivar v. State*, 980 S.W.2d 475, 496 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Appellant did not object on the basis of the Confrontation Clause until after the

statement was made, and the State proved its hearsay objection and sought to continue questioning Rychlik about Quintero's statements. Because Confrontation and hearsay are distinct objections, an objection made after evidence has been admitted does not preserve error. *Ruth v. State*, 167 S.W.3d 560, 567 n.5 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (noting that "[t]he party waives any complaint if an objection is made after admission of the evidence"). Because appellant did not make a Confrontation Clause objection until after Rychlik had testified about Quintero's "admi[ssion] that she had been into a verbal altercation or a physical altercation with her ex-boyfriend" and that she stated that "he did this," such statements by Quintero were properly considered by the trial court.

Third, Quintero's statements were not the only evidence of her injuries. The photographs of her injuries were admitted without objection. And, Rychlik, who saw the injuries first hand, testified that "due to the physical evidence that [he] observed on [Quintero's] person," he concluded that Quintero had been assaulted and strangled.

In sum, the State presented evidence that Quintero identified appellant as her assailant on the 911 call, and Rychlik, who spoke to Quintero minutes after the 911 call, saw evidence of injuries that were consistent with having been strangled. Even without Quintero's statements to Rychlik at the apartment (other than the statement that came in before appellant raised a Confrontation Clause objection) or during the

audio portion of the body-cam video, there was evidence to support the trial court's exercise of discretion in revoking appellant's deferred adjudication. We also note that the substance of Quintero's testimonial statements on the body-cam video had already been admitted before appellant ever raised a Confrontation Clause objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

## CONCLUSION

We overrule appellant's Confrontation Clause issues and affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).

11